**FILED**
**Jul 30, 2021**
**07:15 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | | |
|---|---|---|
| **WILLIE SMITH,** | ) | **Docket No. 2019-08-0221** |
| **Employee,** | ) | |
| **v.** | ) | |
| **MEMPHIS NATIONAL PARTS** | ) | **State File No. 52354-2018** |
| **WAREHOUSE/DAIMLER TRUCKS,** | ) | |
| **Employer,** | ) | |
| **And** | ) | |
| **NEW HAMPSHIRE INSURANCE** | ) | **Judge Deana Seymour** |
| **CO.,** | ) | |
| **Carrier.** | ) | |

---

## EXPEDITED HEARING ORDER

---

This case came before the Court on June 30, 2021, for an Expedited Hearing. The issue is whether Mr. Smith is entitled to the back surgery recommended by his authorized treating physician.[1] For the reasons below, the Court holds he is not entitled to the surgery.

## History of Claim

Mr. Smith injured his back while lifting a box at work on July 12, 2018. Daimler provided authorized treatment with orthopedic surgeon Dr. Samuel Murrell. Mr. Smith saw Dr. Murrell on July 25 for low-back pain and numbness in his left toes.[2] Dr. Murrell

---

[1] The Dispute Certification Notice identified the issues as medical and temporary disability benefits. However, Mr. Smith did not pursue temporary disability at this hearing. Daimler attempted to challenge compensability at the hearing, but since that issue was not listed on the Dispute Certification Notice, the Court did not consider it.

[2] Mr. Smith reported a history of "bad disks" since 2011 and told Dr. Murrell he had been doing well with conservative treatment until the July 12 injury. He testified his primary physician prescribed medication for low-back and groin pain extending into his left leg for many years. He also suffered a work injury to his low back in 2016 that resulted in an MRI and epidural injection but no surgery. He last saw his primary physician due to low-back and left-leg pain four months before the July 2018 injury.

1

diagnosed acute low-back pain with associated left sciatica. He prescribed medication and physical therapy.

Physical therapy did not help, so Dr. Murrell ordered a lumbar MRI. The MRI showed degenerative changes and a left paracentral disc protrusion at L5-S1 that *could* contact the left nerve root. Dr. Murrell ordered an epidural steroid injection and requested the 2016 lumbar MRI from a past work injury "to see if there has been a progression of the disease at that L5-S1 level or whether the foraminal narrowing is due as I suspect to more chronic changes."

Mr. Smith's symptoms improved, but he continued to have numbness in his left leg. Dr. Murrell recommended additional physical therapy. In January 2019, Mr. Smith returned to Dr. Murrell, advising that the physical therapy worsened his symptoms, and the steroid injection was no longer effective. Dr. Murrell discussed *possibly proceeding* with surgery. Mr. Smith wanted to consider his options before deciding.

Two months later, Mr. Smith returned to Dr. Murrell, who had received the 2016 MRI. He noted Mr. Smith's "disc abnormality at L5-S1 has shown a structural change and is larger . . . [W]here it showed no evidence of significant neural impingement on the 7/20/2016 it does show impingement on the 9/21/2018 study." Dr. Murrell related this structural change to the 2018 work injury because he did not know of any other injury or event that would have caused it. He discussed his findings with Mr. Smith, who decided to proceed with surgery.[3]

Before surgery, Daimler requested a second opinion from neurosurgeon Dr. John Brophy. He reviewed Mr. Smith's medical records and evaluated him on June 4. Dr. Brophy recorded that ninety percent of Mr. Smith's pain was in his low back with some left-leg pain and paresthesia in the left great toe.

Dr. Brophy determined that Mr. Smith had "chronic back pain associated with lumbar spondylosis without clinical evidence of significant lumbar radiculopathy or definite radiographic evidence of nerve root compression." He did not think the lumbar surgery that Dr. Murrell suggested would improve Mr. Smith's back pain. He explained that "the reason to perform the surgery is to take pressure off the nerve, and if he doesn't have pain related to pressure on the nerve and the MRI doesn't demonstrate pressure on the nerve, those patients aren't better in my experience." He suggested Mr. Smith attempt a home endurance exercise program and continue conservative treatment.

Later in June, Mr. Smith returned to Dr. Murrell, stating that Dr. Brophy did not

---

3 Daimler filed a Notice of Denial on January 29, 2019, claiming Mr. Smith's condition was due to an idiopathic condition or physical infirmity unrelated to his employment. However, it continued to provide authorized treatment. A month later, Mr. Smith filed a Petition for Benefit Determination for medical benefits.

think he needed surgery. Dr. Murrell wrote that "on my review I thought that there *might* be some irritation or impingement of the S1 nerve root." (Emphasis added).

Dr. Murrell then ordered a myelogram and post myelogram CT study. He explained that if the study showed "poor filling or significant compression or deviation of that nerve root then surgery would be appropriate . . . [S]hould this show no significant abnormality then there would be little more that I would have to recommend."

After the tests, Mr. Smith returned to Dr. Murrell, who noted a disc extrusion extending at L5-S1 effacing the thecal sac and left S1 nerve. Since Mr. Smith appeared to "be failing nonoperative conservative care," Dr. Murrell recommended surgery, which Daimler denied.

Dr. Murrell testified by deposition in June 2020. He confirmed that, as of August 12, 2019, he believed the recommended surgery was the next reasonable and necessary step in Mr. Smith's treatment. However, he needed to re-evaluate him. He agreed that he never limited Mr. Smith's ability to work full duty.

Mr. Smith returned to Dr. Murrell in December 2020 for evaluation and requested a discharge. Since so much time had passed, Dr. Murrell ordered an MRI to determine the status of the L5-S1 disc. He noted that the MRI showed degenerative changes at L4-5 and L5-S1 with a broad-based disc bulge at L5-S1, and a superimposed left-sided disc protrusion resulting in significant foraminal stenosis. Dr. Murrell wrote that Mr. Smith had a negative straight leg raise and normal range of motion with mild lumbar spine discomfort.

Based on this evaluation, Dr. Murrell again recommended surgery; however, he cautioned Mr. Smith that the surgery would not alleviate his chronic underlying degenerative changes that were not related to his work injury.

Daimler sent the recommendation through utilization review. Based on the Official Disability Guidelines, UR reviewer Dr. Steven Arsht determined the surgery was not medically necessary. Mr. Smith appealed the UR decision to the Bureau, and Dr. James Talmage, Assistant Medical Director, and Dr. Robert Snyder, Medical Director, upheld the UR denial, stating:

> It is suggested that the patient be re-examined for sensory, motor, and reflex deficits, with Dr. Murrell having access to the images (not just the reports) from the 9/21/2018 MRI, the 7/19/2019 CT Myelogram, and the 12/5/2020 MRI, and then that the case be resubmitted to the adjuster. *Since surgery cannot decompress a nerve root that in fact is not compressed, Dr. Murrell should comment on progression of stenosis affecting the left L5 and left S1 nerve roots.*

3

(Emphasis added.)

After this decision, Daimler returned Mr. Smith to Dr. Brophy in May 2021 for reevaluation. Dr. Brophy reviewed the recent radiographic studies and noted that Mr. Smith reported low-back pain and pain radiating from this left buttock to the calf.

Dr. Brophy testified by deposition that the radiographic studies did not confirm nerve root compression. He stated, "[T]he key thing on the myelogram part is looking at the symmetry of the filling of the contrast of the nerve−S1 nerve root on both sides, and in fact it was symmetric." The radiology report confirmed "normal opacification of the nerve root sleeves . . . [T]herefore, there is no objective evidence of nerve root compression by definition, and that is the gold standard."

Dr. Brophy addressed the December MRI scan that showed a L5-S1 herniation touching the left S1 nerve root. He stated that, although the herniation existed, he observed epidural fat in back of the left S-1 root, which is usually not present "if there is actual pressure on the nerve."

Dr. Brophy concluded that he saw no evidence of S1 nerve root compression that would warrant surgery. In his opinion, surgery "will not solve the problem and [is], therefore, not medically necessary."

At the hearing, Mr. Smith also testified about his current condition. He said that he had worked for Daimler for fifteen years. Since July 12, 2018, his pain has been constant, keeping him awake at night and restricting his activities. Mr. Smith conceded that he has continued to work without restrictions for forty to forty-eight hours per week but stated his co-workers help him with lifting.

On cross-examination, Mr. Smith recounted his back problems since 2011. He agreed that he suffered a low-back injury in 2016, and his primary care physician has prescribed medication for his low-back pain for many years.

**Findings of Fact and Conclusions of Law**

At an Expedited Hearing, Mr. Smith must show that he is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2020); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). Here, the issue is whether Mr. Smith presented sufficient evidence to prove the recommended surgery is medically necessary. Tenn. Code Ann. § 50-6-204(a)(1)(A). The Court holds that he did not.

In *Morgan v. Macy's*, 2016 TN Wrk. Comp. App. Bd. LEXIS 39, at *17 (Aug. 31,

2016), the Appeals Board held that "it is evident that a trial court can apply one of two potential provisions to the issue of medical necessity in any given case. The Court first recognized that Tennessee courts have long acknowledged that treatment recommended by the authorized treating physician is presumed reasonable and medically necessary and considered this presumption rebuttable by a preponderance of the evidence. *See Walker v. G.UB.MK Constructors,* No. E2015-00346-SC-R3-WC, 2016 Tenn. LEXIS 313, at *12 (Tenn. Workers' Comp. Panel May 2, 2016). Second, where the employee shows by expert medical evidence that the recommended treatment "*explicitly follows the treatment guidelines*" or "is reasonably derived therefrom, including allowances for specific adjustments to treatment," the burden shifts to the employer to rebut the presumption of medical necessity by clear and convincing evidence. *See* Tenn. Code Ann. § 50-6-124(h), 204(a)(3)(I); Tenn. Comp. R. & Regs. 0800-02-25-.03(2) (February, 2018) (Emphasis added).

The Court finds Mr. Smith did not prove that the recommended surgery "explicitly follows the treatment guidelines" or "is reasonably derived therefrom." Thus, Daimler must overcome the presumption in favor of medical necessity of the recommended surgery by a preponderance of the evidence.

The Court is presented with different opinions as to what constitutes reasonable and necessary treatment for Mr. Smith's complaints, and the Court has discretion to determine which opinion to accept. *Patterson v. Huff & Puff Trucking,* 2018 TN Wrk. Comp. App. Bd., LEXIS 33 at *9 (July 6, 2018). When deciding, the Court may consider, among other things, "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Bass v. The Home Depot U.S.A, Inc.,* 2017 TN Wrk. Comp. App. Bd., LEXIS 36 at *9 (May 26, 2017.)

Here, Dr. Murrell recommended surgery to relieve pressure on a nerve root he believed was causing Mr. Smith's symptoms. Daimler requested a second opinion from neurosurgeon Dr. John Brophy, who disagreed with the surgery recommendation.

When Mr. Smith returned to Dr. Murrell and told him that Dr. Brophy did not think he needed surgery, Dr. Murrell wrote "on my review I thought there *might* be some irritation or impingement of the S1 nerve root." He ordered a myelogram and post myelogram CT study, explaining if the study shows "poor filling or significant compression or deviation of the nerve root then surgery would be appropriate . . . . [S]hould this show no significant abnormality then there would be little more that I would have to recommend."

Dr. Murrell reviewed those studies, noted the disc extrusion extending at L5-S1 effacing the thecal sac and left S1 nerve and requested surgery with "no guarantees given." He ordered another MRI, which again showed the disc protrusion. Dr. Murrell

5

noted that Mr. Smith had a negative straight leg raise and normal range of motion with mild discomfort of his lumbar spine. He agreed to the surgery but cautioned Mr. Smith that the recommended surgery would not alleviate his chronic underlying degenerative changes.

Daimler sent the recommended surgery through utilization review, where orthopedic surgeon Dr. Arsht determined the surgery was not medically necessary. Mr. Smith appealed the decision to the Bureau's Medical Directors, who upheld Dr. Arsht's denial.

After this decision, Mr. Smith returned to Dr. Brophy to review the diagnostic studies since he last saw him. After that visit, Dr. Brophy described further findings to support his opinion that the recommended surgery was not medically necessary. Dr. Brophy concluded that surgery "will not solve the problem and [is], therefore, not medically necessary."

In sum, Dr. Murrell stands alone in his opinion, while three other duly qualified orthopedic surgeons and a neurosurgeon reached different conclusions. Further, Dr. Brophy gave detailed and convincing reasoning to support his opinion, and he never altered that opinion despite cross-examination.

The Court holds that based on the foregoing, Daimler overcame the statutory presumption of medical necessity by a preponderance of the evidence. Therefore, Mr. Smith is unlikely to prove at a hearing on the merits that the recommended back surgery is medically necessary.[4]

**IT IS, THEREFORE, ORDERED** as follows:

1.  Mr. Smith's request for the surgery recommended by Dr. Samuel Murrell is denied at this time.

2.  This case is set for a Scheduling Hearing on September 27, 2021, at 10:30 a.m. You must call 866-943-0014 to participate in the Hearing. Failure to call may result in a determination of the issues without your participation.

**ENTERED July 30, 2021.**

_____
**JUDGE DEANA C. SEYMOUR**
**Court of Workers' Compensation Claims**

---

[4] Based on this ruling, Mr. Smith's request for attorney's fees for wrongful denial is moot.

# APPENDIX

Exhibits:
1. Deposition Transcript of Dr. Samuel Murrell
2. Medical Records, filed March 23, 2021
3. Deposition Transcript of Dr. John Brophy
4. Panel of Physicians
5. C-23 Denial, filed January 9, 2019 (2 pages)
6. Utilization Review Denial, dated February 3, 2021
7. Myelogram Report, dated July 19, 2019
8. Semmes Murphy Record, dated September 13, 2012

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification
3. Request for Expedited Hearing, with Mr. Smith's affidavit
4. Employee's Notice of Filing Deposition Transcript of Dr. Samuel Murrell
5. Order on Status Hearing
6. Employee's Expedited Hearing Brief
7. Employer's Response to Employee's Request for Expedited Hearing and Pre-Hearing Brief
8. Employer's Notice of Filing Deposition Transcript of John D. Brophy, MD
9. Employer's Supplemental Response to Employee's Request for Expedited Hearing and Prehearing Brief

## CERTIFICATE OF SERVICE

I certify that a copy of this order was sent as indicated on July 30, 2021.

| Name | Certified Mail | U.S. Mail | Email | Service sent to: |
|------|------|------|------|------|
| **Monica Rejaei, Employee's attorney** | | | X | mrejaei@nstlaw.com |
| **Donald Babineaux, Employer's attorney** | | | X | dbabineaiu@gwtclaw.com |

Penny Shrum, Court Clerk
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

8



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies). Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties
**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*